**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ | ) | |
| **REBECCA URBAN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil No.** |
| | ) | **11-10915-FDS** |
| **v.** | ) | |
| | ) | |
| **FEDERAL HOME LOAN** | ) | |
| **MORTGAGE CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

**SAYLOR, J.**

 This dispute arises out of a post-foreclosure sale of property.  Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") regularly acquires title to properties that served as collateral for defaulted mortgages, after which Freddie Mac generally liquidates the property through public sale.  Plaintiff Rebecca Urban purchased one of these properties in Massachusetts.

 The complaint alleges that under the terms of the Purchase and Sale Agreement and Addendum #1 to that agreement, Freddie Mac was obligated to pay for Urban's title insurance if she agreed to use the title insurance company used by Freddie Mac's attorney or agent.  Urban contends that she agreed to use such a title insurance company, but Freddie Mac refused to honor that provision of the agreement.  The complaint alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Mass. Gen. Laws ch. 93A.[1]

 Defendant has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to

---

[1] The complaint also includes class action allegations.  However, a motion for class certification has not yet been filed.  *See* Fed. R. Civ. Pro. 7(b)(1); Mass. Local Rule 7.1(b).

state a claim upon which relief can be granted.  For the following reasons, the motion will be denied.

## I.     Factual Background

The following factual allegations are drawn from the complaint and the attached exhibits.

On April 14, 2010, Freddie Mac acquired title to a property located at 314 George Hill Road in Lancaster, Massachusetts.  (Compl. ¶ 25).  It then listed the property for sale to the public.  (*Id.*).  Urban made an offer to purchase the property, which Freddie Mac accepted.  (*Id.* ¶ 26).

On September 24, 2010, Urban and Freddie Mac entered into a contract for the sale of the property.  (*Id.*; State Ct. Record at 22-25).  In addition to a Purchase and Sale Agreement, the contract contained an addendum, titled "Addendum #1 to Contract of Sale."  (*Id.* ¶ 26; State Ct. Record at 26-32) ("Addendum").  According to the Addendum, its language controls in the event of any conflict between its provisions and those of the Purchase and Sale Agreement.  (Addendum at 1).

Paragraph 17(c) of the Addendum states as follows:

> Purchaser may choose the title insurance company for the closing.  If Purchaser agrees to use the title insurance company utilized by the Seller's attorney or agent, then Seller agrees to pay for Purchaser's Owner's Title Policy.  SELLER WILL NOT BE OBLIGATED TO PAY ANY PORTION OF THE COST OF AN OWNER'S TITLE POLICY IF THE POLICY IS NOT OBTAINED FROM THE TITLE INSURANCE COMPANY UTILIZED BY SELLER'S ATTORNEY OR AGENT.

(Addendum ¶ 17(c) (emphasis in original); Compl. ¶ 28).  The complaint alleges that this provision was an inducement to enter the contract and would have provided a substantial benefit to Urban.  (Compl. ¶ 29).

After execution of the contract, Urban informed Freddie Mac's counsel that she agreed to use the title insurance company utilized by Freddie Mac's attorney or agent in accordance with paragraph 17(c) of the Addendum. (Compl. ¶ 30). According to the complaint, Freddie Mac, through its attorney, responded in "words to the substantial effect of: 'We get this question all the time. Freddie Mac does not honor that provision in Massachusetts. We told them this is a problem, but that is how it is.'" (Compl. ¶ 31). The attorney further explained that the reason Freddie Mac does not honor the provision in Massachusetts was due to a "conflict of interest." (Compl. ¶ 32).

After learning that Freddie Mac would not honor the provision, Urban decided to proceed with the closing and to purchase her own owner's title insurance policy. (Compl. ¶ 33). The closing occurred on December 10, 2010. (Compl. ¶ 35).

On January 5, 2011, before finalizing her title insurance policy, Urban again requested that her owner's policy be issued through Freddie Mac's attorney or agent. (*Id.*; State Ct. Record at 37). Freddie Mac, through its attorney, again denied Urban's request, stating that "[s]tate ethics rules prohibit parties from engaging in conflicts of interest, such as representing both the seller and the buyer in a real estate transaction." (State Ct. Record at 37; Compl. ¶ 36). Urban then purchased her own owner's title insurance policy for $680. (Compl. ¶ 37).

## II.   **Procedural Background**

On January 7, 2011, Urban sent Freddie Mac a formal demand letter pursuant to Mass. Gen. Laws ch. 93A alleging that its conduct constituted unfair and deceptive business practices. (State Ct. Record at 39-40). Freddie Mac, through its attorney, replied on February 7, 2011, and stated that it had retained Harmon Law Offices, P.C. to facilitate the sale of the property, and that

Harmon did not use a title insurance company in connection with the sale because it had been previously retained to facilitate the foreclosure sale on the property on March 8, 2010. (State Ct. Record, at 42-43). Harmon was precluded from obtaining a title insurance policy pursuant to Rule 1.7 of the Massachusetts Rules of Professional Conduct, and thus, no title company existed that Urban could have used to comply with paragraph 17(c) of the Addendum. (*Id.*).[2]

Urban initiated this action on April 12, 2011. The complaint alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of Mass. Gen. Laws ch. 93A. Freddie Mac removed the matter to this Court on May 13, 2011, based on the jurisdictional provisions of 12 U.S.C. § 1452(f). It has now moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

## III.   Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Material attached to a complaint, or incorporated by reference, are a part of the pleading itself, and the Court may consider them on a motion to dismiss. *Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true

---

[2] Rule 1.7 in essence prohibits attorneys from representing clients under circumstances presenting a conflict of interest.

4

(even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## IV.   Analysis

### 1.   Merger

As a threshold matter, defendant contends that plaintiffs' claims are barred by the doctrine of merger. In Massachusetts, a buyer's "acceptance of a deed ordinarily merges all prior covenants in the deed, discharging all obligations contained in the purchase and sale agreement except those specified in the deed itself." *Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 441-442 (1975) (citing *Pybus v. Grasso*, 317 Mass. 716, 717 (1945)). There is an exception to the merger doctrine for "promises 'which are additional or collateral to the main promise to convey the land and are not inconsistent with the deed as given.'" *Snyder*, 368 Mass. at 442 (quoting *Pybus*, 317 Mass. at 719). "This exception is limited to covenants which would naturally be omitted from the deed so that their absence in the deed does not manifest an intent by the parties that they be there merged." *Id.*

The parties expressly incorporated the doctrine of merger into the Purchase and Sale Agreement in paragraph 13, labeled "ACCEPTANCE OF DEED." That paragraph provides:

> The acceptance of a deed by the BUYER or his nominee, as the case may be, shall be deemed to be a full performance and discharge of every agreement and

5

> obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

(Purchase and Sale ¶ 13); *see Albrecht v. Clifford*, 436 Mass. 706, 716 (2002) (interpreting identical merger clause as incorporating doctrine of merger and exceptions); *Snyder*, 368 Mass. at 442 (same).  Paragraph 22 of the Addendum includes language addressing the same subject:

> The acceptance of a deed by the Purchaser shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of the Contract of Sale.  Upon acceptance of a deed the Contract of Sale shall be deemed to be merged into the deed and Seller's obligations to Purchaser shall be governed solely by the terms of the deed and shall be a bar against any action by the Purchaser against the Seller for any claim based upon the Contract of Sale.

(Addendum ¶ 22).

    In Massachusetts, "'the doctrine of merger or waiver by acceptance of the deed . . . *applies to defects in the conveyance itself*, such as failure to convey all the area contracted for as well as to defects in the title.'" *McMahon v. M & D Builders, Inc.*, 360 Mass. 54, 60 (1971) (emphasis added) (quoting *Holihan v. Rabenius Builders, Inc.*, 355 Mass. 639, 642 (1969)).  Accepting the deed therefore "operate[s] as a merger or waiver only to the extent of precluding any claim that the title which the defendant conveyed did not satisfy the requirements of the agreement." *Id.*; *accord Albrecht*, 436 Mass. at 716-17; *Bowditch v. E.T. Slattery Co.*, 263 Mass. 496, 497, 499 (1928) (holding that a promise that purchaser will pay broker's commission was collateral and not merged, despite explicit merger clause in contract, because doctrine of merger "deprives the purchaser of any redress for defects in title"); *cf. Maksymiuk v. Puceta*, 279 Mass. 346, 355-357 (1932) (enforcing collateral agreement to guarantee payment of mortgage on property that was subject of deed).  The exception is "narrow," and applies only when there is an

"undertaking collateral to the conveyance of the premises" in the contract of sale. *Farineau v. Easley*, 2007 WL 2409837, at *3 (Mass. App. Div. Aug. 20, 2007); *Solomon v. Birger*, 19 Mass. App. Ct. 634, 642 (1985).[3]

Here, plaintiff alleges that defendant promised to pay for her title insurance if she met certain conditions. While this promise is technically part of the agreement to convey the property, it was to be performed *in addition to* the delivery of the deed. *Pendersen v. Leahy*, 397 Mass. 689, 691-92 (1986) ("Undertakings and promises which are collateral or additional to the delivery of title, . . . and which are not inconsistent with the deed as given, are considered an exception to the general rule [of merger by deed]"); *see also Chavez v. Gomez*, 423 P.2d 31, 33 (N.M. 1967). Like a promise to pay a broker's commission, a promise to pay for title insurance is related to the overall transaction conveying the property, but is an additional undertaking that could be performed separately from the conveyance itself. *See Bowditch*, 263 Mass. at 499. Title insurance does not affect the validity of title, the existence of encumbrances, or the amount or quality of the land conveyed; rather, it is an additional purchase to provide the buyer a safety net in the event that those types of defects become known in the future. *See McMahon*, 360 Mass. at 60; *Jolley v. Idaho Securities, Inc.*, 414 P.2d 879, 885-86 (Idaho 1966). Furthermore, a promise to pay for title insurance is not inconsistent with the deed, and is a "covenant[] which would

---

[3] Most Massachusetts cases that have found an agreement to be "collateral" have involved promises to construct or repair a building on the property to be conveyed. *See Farineau*, 2007 WL 2409837, at *3 (listing cases); *Solomon*, 19 Mass. App. Ct. at 642. This, of course, does not mean that the "collateral agreement" exception to the doctrine of merger is entirely limited to construction or repair cases. *See, e.g.*, *Bowditch*, 263 Mass. at 497; *Bloch v. Bovelli*, 2009 WL 1448936, at *2 (Mass. Super. Mar. 24, 2009); *Sweeney v. DeLuca*, 2006 WL 936688, at *4 (Mass. Super. Mar. 16, 2006); *In re Perry*, 353 B.R. 18, 27-28 (Bankr. D. Mass. 2006); *cf. Albrecht v. Clifford*, 436 Mass. 706, 711 (Mass. 2002) ("[The] [I]mplied [W]arranty [of Habitability] is independent and collateral to the covenant to convey, and survives the passing of title to and taking possession of the real estate.").

naturally be omitted from the deed"; thus, its absence in the deed does not manifest an intent of the parties that the covenant be merged. *See Snyder*, 368 Mass. at 442; *Pendersen*, 397 Mass. at 692.[4]  Therefore, under the Massachusetts doctrine of merger, defendant's promise to pay for title insurance was collateral or additional to its promise to convey title, and falls within the exception to the merger rule.

That does not, however, end the analysis.  In addition to the standard merger language, the Addendum expressly provides that "acceptance of a deed . . . shall be a bar against *any action* by the Purchaser against the Seller for *any claim* based upon the Contract of Sale."  (Addendum ¶ 22 (emphasis added)).  It is unclear, at this stage, whether that language requires a different result. On its face, that language appears to do exactly what defendant contends—that is, bar this action. It is possible that the language reflects the parties' intention that the normal exceptions to the doctrine of merger should not apply; if so, the parties "are entitled to the benefit of the language of their agreement."  *Solomon*, 19 Mass. App. Ct. at 642; *see also Snyder*, 368 Mass. at 442; 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 33:37 (4th ed. 1999) ("Whether a parol agreement is collateral or integral to a deed . . . depends upon intent."); 38 A.L.R.2d 1310, § 6.

On the other hand, that language may not be markedly different from the language in the merger clause, which states that acceptance of the deed "shall be deemed to be a *full* performance

---

[4] Massachusetts courts do not appear to have directly addressed the issue.  However, other courts have found a promise to provide title insurance to be collateral to a promise conveying title.  *See, e.g., Jolley*, 414 P.2d at 885-86; *Chavez*, 423 P.2d at 33; *Sale v. Figg*, 180 S.E. 173, 174, 175-76 (Va. 1935); *Stanford Development Corp. v. Stanford Condominium Owners Ass'n*, 285 S.W.3d 45, 51-52 (Tex. App. 2009); *Reeves v. McClain*, 783 P.2d 606, 610-11 (Wash. Ct. App. 1989); *see also Bakken v. Price*, 613 P.2d 1222, 1231-32 (Wyo. 1980) (McClintock, J. dissenting in part) (dissenting from majority's holding that covenant to provide title insurance merged into deed and agreeing with *Chavez* and *Jolley*); *cf. Stevens v. Vail Associates, Inc.*, 472 P.2d 729, 730-32 (Colo. App. 1970) (reaffirming apparent trial court determination that "title insurance policy setting forth the restrictions" on the property was not barred by doctrine of merger).  *But see Bakken*, 613 P.2d at 1227-29.

and discharge of *every agreement and obligation* herein contained or expressed." (Purchase and Sale ¶ 13 (emphasis added)).  As noted, Massachusetts courts have interpreted such language as incorporating the common-law merger doctrine and its exceptions.  *See Snyder*, 368 Mass. at 442. The contract may therefore simply be poorly drafted, with redundant provisions.

For present purposes, it is enough to note that the language of the Addendum may be ambiguous, and that more factual development may be needed.[5]  At the very least, the issue cannot be resolved on a motion to dismiss.  Defendant's motion to dismiss based on merger by deed will therefore be denied.

## 2. __Breach of Contract__

Defendant next contends that plaintiff has failed to allege a breach of contract, and thus that claim must be dismissed.  To assert a claim for breach of contract in Massachusetts, a plaintiff must allege "that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage."  *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted).  The parties do not dispute that they entered into a valid contract; however, defendant contends that the complaint fails to allege that it breached the contract.  The parties agree that plaintiff asked to use the title insurance company used by defendant's agent, and that defendant did not pay for plaintiff's title insurance.

---

[5] The Court takes no position at this early stage as to the exact meaning of the agreement, or whether parol evidence will be admissible to interpret the parties' intent.

The Court also recognizes the principle that in certain circumstances ambiguous contract language should be construed against the drafter.  *See Jacobson v. Mailboxes Etc. U.S.A.*, 419 Mass. 572, 578-579 (1995), *Cody v. Connecticut General Life Ins. Co.*, 387 Mass. 142, 146 (1982); *RCI Northeast Services Div. v. Boston Edison Co.*, 637 F. Supp. 1178, 1179 (D. Mass. 1986).  However, in so doing this Court must consider all of the circumstances, and the factual record has not yet been developed.  *See Sea-Land Service, Inc. v. R.V. D'Alfonso Co.*, 727 F.2d 1, 3 (1st Cir. 1984).

However, plaintiff contends that, pursuant to paragraph 17(c) of the Addendum, defendant was obligated to pay for her title insurance after she *agreed* to use defendant's agent's title insurance company.  Defendant argues that its obligation to pay is triggered only if plaintiff actually *obtains* title insurance from a company used by its agent, which plaintiff did not do.  The question before the Court, therefore, is what condition had to be met to trigger defendant's obligation to pay for the title insurance policy.

In Massachusetts, contract interpretation is a question of law for the court to decide, unless the contract is ambiguous.  *Nicolaci v. Anapol*, 387 F.3d 21, 26 (1st Cir. 2004).  "A contract is ambiguous if 'an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken.'"  *Id.* (quoting *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 53 (1st Cir. 2001)).  In determining the meaning of an agreement, the court must consider the contract as a whole.  *Honey Dew Assocs. v. Creighton Muscato Enters.*, 73 Mass. App. Ct. 846, 851 (2009) (citing *Murray v. Edes Mfg. Co.*, 309 Mass. 395, 401 (1941)).  The meaning of a contract cannot be determined "by isolating words and interpreting them as though they stood alone."  *Nicolaci*, 387 F.3d at 26 (quoting *Starr v. Fordham*, 420 Mass. 178, 190 (1995)).

Paragraph 17(c) states that "[i]f Purchaser *agrees* to use the title insurance company utilized by the Seller's attorney or agent, then Seller agrees to pay for Purchaser's Owner's Title Policy."  It goes on to state that "Seller will not be obligated to pay any portion of the cost of an

Owner's Title Policy if the Policy *is not obtained* from the title insurance company utilized by the Seller's attorney or agent."  (Addendum ¶ 17(c) (emphasis added)).[6]

This language can plausibly be read in multiple ways.  The most obvious interpretation is that defendant's obligation to pay is triggered when plaintiff *agrees* to use the title insurance company used by defendant's agent *and* subsequently uses that company to obtain title insurance.  But what happens when plaintiff agrees to use that title insurance company, but cannot use that company to buy title insurance through no fault of her own?  The difficulty arises from the fact that the contractual language assumes the existence of a title insurance company used by defendant's agent.  However, in this case, there is no such title insurance company, and, thus it is impossible for plaintiff to fulfill the condition.  *See Boston Plate & Window Glass Co. v. John Bowen Co.*, 335 Mass. 697, 700 (1957) ("[Where] the parties . . . from the beginning have contemplated the continued existence of some particular specified thing as the foundation of what was to be done, then . . . the contract is to be construed . . . as subject to an implied condition that the parties shall be excused in case before breach performance becomes impossible from the accidental perishing of the thing without the fault of either party.").

This, however, does not necessarily extinguish plaintiff's contract claim.  "Where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform . . . the promisor may not invoke the other party's nonperformance as a defense when sued upon the contract."  13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 39:3 (4th ed. 2000); *see also Northeast Drilling v. Inner Space Servs.*, 243 F.3d 25, 40 (1st Cir. 2001);

---

[6] In the original contract, this sentence is written in all capital letters and underlined.  The formatting has been changed here for ease of reading.

11

*Frank Fitzgerald, Inc. v. Pacella Bros., Inc.*, 2 Mass. App. Ct. 240, 242 (1974) ("One who prevents the performance of a contract cannot take advantage of its nonperformance.").   "It is basic contract law that a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract." *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 542 (7th Cir. 1996).

The complaint alleges that plaintiff agreed to use defendant's title insurance company, but that defendant affirmatively acted to prevent plaintiff from triggering the condition precedent, either by falsely asserting that it could not provide title insurance due to a conflict of interest or by conditionally agreeing to pay for title insurance that it knew did not exist.  (Compl. ¶¶ 18-21, 30-32).  Although defendant did not breach the letter of the contract, the complaint alleges that defendant prevented the occurrence of the condition precedent that would have obligated it to pay for the title insurance policy.  Under the circumstances, that is sufficient.  The motion to dismiss the breach of contract claim will therefore be denied.

### 3.        Breach of Implied Covenant of Good Faith and Fair Dealing

Defendant also contends plaintiff fails to state a claim for a breach of the implied covenant of good faith and fair dealing.  A covenant of good faith and fair dealing is implied in every contract.  *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471-472 (1991) (quotations omitted).  "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants*, 441 Mass. at 385.

12

The covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship.  *Uno Restaurants*, 441 Mass. at 385-386; *Accusoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001).  However, "[a] party may breach the covenant of good faith and fair dealing . . . without breaching any express term of th[e] contract.  Otherwise, the implied covenant would be a mere redundancy."  *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 240 (D. Mass. 2011) (quoting *Speakman v. Allmerica Financial Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005)).  "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance."  *Speakman*, 367 F. Supp. 2d at 132.

Defendant did not breach the letter of its contract with plaintiff.  However, as discussed above, plaintiff has alleged that defendant agreed to a term in a contract that it knew could not be performed.  The complaint specifically alleges that defendant knew that it did not honor paragraph 17(c) in Massachusetts—either because defendant falsely asserted a conflict of interest that prohibited it from doing so, or because it genuinely believed it could not.  (Compl. ¶¶ 18-21, 31-32).  Despite knowing this, the complaint alleges that defendant willfully continued to promise to pay for title insurance that buyers obtain from its agent's company.  (*Id.* at ¶ 21-22).  Thus, in essence, the complaint alleges that defendant knowingly agreed to a contractual provision that represented to plaintiff that it would pay for her title insurance if certain conditions were met, when defendant knew that plaintiff could never meet those conditions.  Such conduct, if true, denies plaintiff her expected fruits of the bargain, and does not conform to the parties' reasonable

understanding of their obligations under the terms of the contract, or reflect the overall spirit of the bargain. *Uno Restaurants*, 441 Mass. at 385; *Speakman*, 367 F. Supp. 2d at 132. Therefore, the complaint states a claim for a breach of the implied covenant of good faith and fair dealing sufficient to survive Rule 12(b)(6).

### 4. Violation of Mass. Gen. Laws 93A

The alleged conduct is also sufficient to state a claim of violation of Mass. Gen. Laws 93A. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws 93A § 2. Conduct is unfair or deceptive if it falls "within any recognized or established common law or statutory concept of unfairness." *VMark Software v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994). Actionable conduct under the statute encompasses "[a]ctions involving fraudulent representations in knowing disregard of the truth," *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 780 (1986), and "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991) (quoting *Wang Laboratories, Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 857 (1986)).

As discussed above, the complaint specifically alleges that defendant knew that plaintiff could not meet the conditions necessary to trigger its obligation to pay for title insurance, yet it agreed to a contractual provision that represented otherwise. Put another way, the complaint alleges that defendant made a false representation to plaintiff in disregard of its contractual obligations. *See Anthony's Pier Four, Inc.*, 411 Mass. at 474; *Datacomm Interface, Inc.*, 396 Mass. at 780. Such allegations are sufficient to allege a violation of Chapter 93A.

14

**V.**     <u>**Conclusion**</u>

For the foregoing reasons, defendant's motion to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  January 25, 2012