**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| REBECCA URBAN, et al., | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | **CIVIL ACTION** |
|  | ) | **No. 11-10915-TSH** |
|  | ) | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**
**June 12, 2014**

**HILLMAN, D.J.**

### Background

Rebecca Urban ("Urban" or "Plaintiff"), has filed suit against the Federal Home Loan Mortgage Corporation ("FHLMC" or "Defendant"). Urban asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of Mass.Gen.L. ch. 93A ("Chapter 93A").[1]

After FHLMC's motion to dismiss and motion for judgment on the pleadings were denied, the Court permitted the parties to engage in limited discovery and set an expedited schedule for the filing of motions for summary judgment. This Memorandum and Order addresses the Motion Of The Defendant, Federal Home Loan Mortgage Corporation, For Summary Judgment (Docket No. 55)("Def's S.J..Motion") and Urban filed Plaintiffs' Motion

---

[1] The Complaint includes a class action demand. To date, no motion for class certification has been filed. *See* Fed.R.Civ.P. 7(b)(1); LR, D.Mass., 7.1(b).

For Summary Judgment Pursuant To Fed.R.Civ.P. 56 (Docket No. 60)("Pl's S.J. Motion"). For the following reasons, Def's S.J. Motion is allowed, in part, and denied, in part. Pl's S.J. Motion is denied.

## Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 153 (1st Cir. 2009). The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party." ' " *Id.* (citation to quoted case omitted). When considering cross-motions for summary judgment, the Court "must consider each motion separately" and, in turn, draw all inferences in favor of the nonmoving party. *Reich v. John Alden Life Ins. Co.,* 126 F.3d 1, 6 (1st Cir. 1997).

### Facts[2]

FHLMC is a publicly traded United States Corporation chartered by an Act of Congress, organized and existing under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. § 1451, *et seq*. FHLMC is currently operating under a conservatorship that began on September 6, 2008 and is conducting its business under the supervision of the Federal Housing Finance Agency. As part of its role in Massachusetts, FHLMC acquires titles to properties that served as collateral for defaulted mortgages and sells those properties. In most cases, the properties have been foreclosed on.

On April 14, 2010, FHLMC acquired title to a property by foreclosure order located at George Hill Road, in Lancaster, Massachusetts (the "Property") . FHLMC listed the Property for sale. Urban made an offer to purchase the Property, which was accepted by FHLMC.

Harmon Law Offices, P.C. ("Harmon Law") represents FHLMC in the acquisition of titles pursuant to the filing of a foreclosure order and subsequent sales of properties in Massachusetts. FHLMC requires buyers purchasing homes from it to enter into a purchase and sale agreement and related addendums. Urban executed a Standard Form Purchase and Sale Agreement on September 24, 2010, which included the following standard merger clause ("Paragraph 13"):

---

[2] Essentially, the only facts which are not agreed to be the parties are statements made by a representative of Harmon Law which concern FHLMC's alleged knowledge that Paragraph 17c. is not enforceable in Massachusetts. These factual allegations, which were attested to by Urban's lawyer, *see* note 3, *infra,* have not been considered by the Court.

13. ACCEPTANCE OF DEED.

> The acceptance of a deed by the BUYER or his nominee, as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

*See Statement of Undisp. Facts By Def. Fed. Home Loan Mtg. Corp.* (Docket No. 57)("*Def's Factual Statement*"), at *Ex F* ("P&S"), Also included was the Addendum #1 to Contract of Sale, which contained the following provisions:

17. <u>Closing Costs/Concessions</u>

c.  Purchaser may choose the title insurance company for the closing. If Purchaser agrees to use the title insurance company utilized by the Seller's attorney or agent, the Seller agrees to pay for Purchasers Owner's Title Policy. <u>SELLER WILL NOT BE OBLIGATED TO PAY ANY PORTION OF THE COST OF AN OWNER'S TITLE POLICY IF THE POLICE IS NOT OBTAINED FROM THE TITLE INUSRANCE COMPANY UTILIZED BY SELLER'S ATTORNEY OR AGENT</u>.

….

22. <u>Acceptance of </u>Deed. The acceptance of a deed by the Purchaser shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of the contract of Sale. Upon acceptance of a deed the Contract of Sale shall be deemed to be merged into the deed and Seller's obligations to Purchaser shall be governed solely by the terms of the deed and shall be a bar against any action by the Purchaser against the Seller for any claim based upon the Contract of Sale.
….

<u>THE UNDERSIGNED APPROVE AND ACCEPT THIS ADDENDUM AND ACKNOWLEDGE THIS ADDENDUM TO BE A PART OF THE CONTRACT OF SALE. IN THE EVENT ANY PROVISION OF THIS ADDENDUM CONFLICTS WITH THE TERMS OF THE CONTRACT OF SALE, THE PROVISIONS OF THIS ADDENDUM SHALL CONTROL</u>.

*See Def's Factual Statement*, at *Ex E* ("Addendum"). The last provision is located immediately above the signature line. Urban signed the Addendum; she also initialed each page of the Addendum. *Id.*

Prior to closing on the Property, Urban, through her attorney, Thomas P. Dillon ("Attorney Dillon") [3], notified Harmon Law that, in accordance with Paragraph 17c. of the Addendum ("Paragraph 17c.), Urban wished to obtain title insurance from the title insurance company utilized by FHLMC's attorney or agent. Harmon replied that under Massachusetts law, FHLMC could not provide the title insurance because it would pose a conflict of interest. More specifically, Harmon Law informed Attorney Dillon that where Harmon Law represents FHLMC, it cannot provide the buyer with the title policy as part of the transaction as it is a conflict of interest to represent both parties to a real estate transaction in Massachusetts.

Urban purchased her own title insurance policy and proceeded with the closing, which took place on December 20, 2010. The cost of the title policy was $680 and was listed on the HUD-1 Settlement Statement as charged to Urban. According to Urban's Hud statement, $476.00 of the $680.00 paid by Urban for title insurance, issued by the Commonwealth Land Title Insurance Company, was paid to Attorney Dillon's law firm, as a commission.

On January 5, 2011, Urban renewed her request that FHLMC purchase the owner's title insurance policy for her. Harmon denied the request because of state ethics rules. On January 10, 2011, Urban served a Chapter 93A demand letter on FHLMC.

---

[3] Attorney Dillon representing Urban in this case and has inserted himself into the proceedings as a percipient witness. Rule 3.7 of the Massachusetts Rules of Professional Responsibility provide that" "A lawyer *shall not* act as an advocate at a trial in which the lawyer is likely to be a necessary witness, unless: (1) the testimony relates to an uncontested issue; (2) the testimony related to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client". In this case, the only possible applicable exclusion is the first, that is, Attorney Dillon would be testifying as to uncontested issues. While Urban does not dispute FHLMC's facts, she adds supplemental facts and in support thereof, cites to the *Aff. Of Thomas M. Dillon*, *see Pl's Statement of Undisputed Mat. Facts* and *Aff. Of Thomas M. Dillon* (Docket Nos. 62 and 62-1). For purposes o this Order, I have not considered the supplemental facts and therefore, will assume that the exception applies. Therefore, Attorney Dillon's disqualification is not warranted, *at this time*.

## Discussion[4]

### *Doctrine of Merger*

Defendant argues that Urban's claims are barred by the doctrine of merger. In Massachusetts, a buyer's "acceptance of a deed ordinarily merges all prior covenants in the deed, discharging all obligations contained in the purchase and sale agreement except those specified in the deed itself." *Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 441-442 (1975). There is an exception to the merger doctrine for "promises 'which are additional or collateral to the main promise to convey the land and are not inconsistent with the deed as given.'" *Snyder*, 368 Mass. at 442 (citation to quoted case omitted). "This exception is limited to covenants which would naturally be omitted from the deed so that their absence in the deed does not manifest an intent by the parties that they be there merged." *Id.*

#### ***Whether Urban's Claims are Barred by Paragraph 13—the Standard Merger Clause***

Language identical to that of Paragraph 13 of the P&S, which provides that the buyer's acceptance of a deed "shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed," has been interpreted as a merger clause, including the requisite exceptions. *See Albrecht v. Clifford*, 436 Mass. 706, 716 (2002) (interpreting identical merger clause as incorporating doctrine of merger and exceptions); *Snyder*, 368 Mass. at 442 (same). Under Massachusetts law, "'the doctrine of merger or waiver by acceptance of the deed . . . *applies to defects in the conveyance itself*, such as failure to convey all the area contracted for as well as to defects in the title.'" *McMahon v. M & D*

---

[4] A substantial part of the the Court's discussion of Urban's legal claims and the law applicable thereto paraphrases or is taken directly from Judge Saylor's opinion denying FHLMC's motion to dismiss, without separate citation. *See Urban v. Federal Home Loan Mortgage Co.*, Civ. No. 11-10915-FDS, 2012 WL 245246 (D.Mass. Jan. 25, 2012).

*Builders, Inc.*, 360 Mass. 54, 60 (1971) (emphasis added) (citation to quoted case omitted). Accordingly, acceptance of the deed "operate[s] as a merger or waiver only to the extent of precluding any claim that the title which the defendant conveyed did not satisfy the requirements of the agreement." *Id.*; *accord Albrecht*, 436 Mass. at 716-17; *Bowditch v. E.T. Slattery Co.*, 263 Mass. 496, 497, 499 (1928) (holding that a promise that purchaser will pay broker's commission was collateral and not merged, despite explicit merger clause in contract, because doctrine of merger "deprives the purchaser of any redress for defects in title"); *cf. Maksymiuk v. Puceta*, 279 Mass. 346, 355-357 (1932) (enforcing collateral agreement to guarantee payment of mortgage on property that was subject of deed). The exception is "narrow," and applies only when there is an "undertaking collateral to the conveyance of the premises" in the contract of sale. *Farineau v. Easley*, 2007 WL 2409837, at *3 (Mass. App. Div. Aug. 20, 2007)(narrow exception to merger clause has been primarily limited to cases involving "house builders" where separate agreement to construct or repair building upon premises conveyed that was to be performed after delivery of deed); *Solomon v. Birger*, 19 Mass. App. Ct. 634, 642 (1985).

Urban alleges that FHLMC promised to pay for her title insurance if she agreed to utilize the title insurance company used by its agent or attorney. While this promise is technically part of FHLMC's obligation under the P&S to convey the Property, it was to be performed in addition to and independent of the delivery of the deed. *Pendersen v. Leahy*, 397 Mass. 689, 691-92 (1986) ("Undertakings and promises which are collateral or additional to the delivery of title, . . . and which are not inconsistent with the deed as given, are considered an exception to the general rule [of merger by deed]"); *see also Chavez v. Gomez*, 423 P.2d 31, 33 (N.M. 1967). Put another way, while FHLMC's promise to pay for title insurance is related to the overall transaction conveying the Property, it is an additional undertaking that could be performed independent of the conveyance itself. *See Bowditch*, 263 Mass. at 499. Moreover, title insurance

7

does not affect the validity of title, the existence of encumbrances, or the amount or quality of the land conveyed; rather, it is an additional purchase to provide the buyer a safety net in the event that those types of defects become known in the future. *See McMahon*, 360 Mass. at 60; *Jolley v. Idaho Securities, Inc.*, 414 P.2d 879, 885-86 (Idaho 1966). Furthermore, a promise to pay for title insurance is not inconsistent with the deed, and is a "covenant[] which would naturally be omitted from the deed"; thus, its absence in the deed does not manifest an intent of the parties that the covenant be merged. *See Snyder*, 368 Mass. at 442; *Pendersen*, 397 Mass. at 692. Therefore, under the Massachusetts doctrine of merger, FHLMC's promise to pay for title insurance was collateral or additional to its promise to convey title, and falls within the exception to the merger rule. *Accord Jolley*, 414 P.2d at 885-86; *Chavez*, 423 P.2d at 33; *Sale v. Figg*, 180 S.E. 173, 174, 175-76 (Va. 1935); *Stanford Development Corp. v. Stanford Condominium Owners Ass'n*, 285 S.W.3d 45, 51-52 (Tex. App. 2009); *Reeves v. McClain*, 783 P.2d 606, 610-11 (Wash. Ct. App. 1989); *see also Bakken v. Price*, 613 P.2d 1222, 1231-32 (Wyo. 1980) (McClintock, J. dissenting in part) (dissenting from majority's holding that covenant to provide title insurance merged into deed and agreeing with *Chavez* and *Jolley*); *cf. Stevens v. Vail Associates, Inc.*, 472 P.2d 729, 730-32 (Colo. App. 1970) (reaffirming apparent trial court determination that "title insurance policy setting forth the restrictions" on the property was not barred by doctrine of merger). *But see Bakken*, 613 P.2d at 1227-29. Consequently, Urban's claims are not barred by Paragraph 13 o f the P&S.

### ***Whether Urban's Claims are Barred by Paragraph 22 To The Addendum***

In addition to the standard merger language contained in Paragraph 13 of the P&S, Paragraph 22 of the Addendum ("Paragraph 22") expressly provides that the buyer's acceptance of the deed "shall be deemed to be a full performance and discharge of every agreement and obligation" by the seller under the P&S and upon acceptance of the deed, the P&S shall be

8

merged into the deed and all of the seller's obligations to the buyer will be governed solely by the terms of the deed and the buyer shall be barred from bringing any action against the seller for *any* claims under the P&S. *See Addendum*, at ¶22 (emphasis supplied).[5]

I find that the language contained in Paragraph 22 is clear and unambiguous and upon acceptance of the deed, bars *any and all* claims which the buyer may have against the seller, whether such claims involve matters collateral to the conveyance or not. In addition to the language being unambiguous, to hold that Paragraph 22 should be interpreted identically to Paragraph 13, as Urban suggests, would render it entirely superfluous. On the other hand, to interpret Paragraph 22 as barring all claims, including collateral claims, gives meaning to the provision. Moreover, the Addendum, provides that should any of its terms conflict with terms contained in the P&S, the language in the Addendum controls. This provision is in all capital letters and underlined and therefore, its meaning could not be plainer to Urban and her counsel. *See Addendum*. Under these circumstances, I find that Urban's claims are barred by express language of the Addendum.[6] Accordingly, Defendant is entitled to summary judgment on Urban's breach of contract claim. I will now address Urban's contention that her claims for breach of the implied covenant of good faith and fair dealing and violation of Chapter 93A survive the merger clause.

### *Whether Urban's Claims For Breach of Implied Covenant of Good Faith and Fair Dealing And Violation of Chapter 93A Survive the Merger Clause*

---

[5] This language, which bars the buyer from asserting *any* claim under the P&S after acceptance of the deed, differs markedly from the merger clause contained in the P&S, which provides only that the buyer's acceptance of the shall discharge the seller's obligations under the purchase agreement.

[6] Given that the FHLMC is using standard purchase and sale documents, it is not surprising that it would include language which would bar a buyer from asserting claims which may be dependent on the jurisdiction in which the sale of property takes place. Furthermore, Urban, who was represented by counsel at the closing. was aware at the time that she went through with the sale that she would have to pay for the title insurance and chose to complete the sale on such terms.

Defendant asserts that Urban fails to state a claim for a breach of the implied covenant of good faith and fair dealing and that even if she does, that claim is barred by Paragraph 22. A covenant of good faith and fair dealing is implied in every contract. *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471-472 (1991) (quotations omitted). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants*, 441 Mass. at 385.

The covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *Uno Restaurants*, 441 Mass. at 385-386; *Accusoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001). However, " '[a] party may breach the covenant of good faith and fair dealing . . . without breaching any express term of th[e] contract. Otherwise, the implied covenant would be a mere redundancy.'" *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 240 (D. Mass. 2011) (citation to quoted case omitted). "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." *Speakman v. Allmerica Financial Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005).

Urban alleges that FHLMC agreed to a term in a contract that it knew could not be performed— either because it falsely asserted a conflict of interest that prohibited it from complying with Paragraph 17c. Such conduct, if true, *could* be found to have denied Urban the expected fruits of her bargain, and not to conform to the parties' reasonable understanding of

their obligations under the terms of the contract, or reflect the overall spirit of the bargain. *Uno Restaurants*, 441 Mass. at 385; *Speakman*, 367 F. Supp. 2d at 132. On the other hand, FHLMC could have included the provision in good faith and failed to honor it because it genuinely believed it could not in the state of Massachusetts. Furthermore, FHLMC could have genuinely believed that the merger clause was sufficient to put parties on notice that it would not be subject to suit for violation of provisions that could not be met in any given jurisdiction. In other words, there is a genuine issue of material fact whether FHLMC acted in bad faith.

In *Sound Techniques v. Hoffman*, 50 Mass.App. Ct. 425 (2000), the court suggested that the parties' intent was paramount in determining whether a merger clause should bar claims based on negligent misrepresentation as opposed to claims involving intentional deceit and fraud (the latter being claims which I find akin to Urban's claim for breach of the covenant of good faith and fair dealing and violation of Chapter 93A):

> There is nothing in the evidence before us that shows or even suggests that the integrity of the bargaining process was tainted by illegality, fraud, duress, unconscionability, or any other invalidating cause. The lease was not a contract of adhesion. Nothing suggests that the bargaining powers of the parties were unequal. Indeed, the evidence showed that [the plaintiff] was represented by counsel throughout the negotiation process …. Based upon the evidence presented and the public policy of this Commonwealth, there is no reasonable basis for ignoring the plain language of the merger clause ….

In this case, there is a genuine issue of material fact as to FHLMC's intent and whether its conduct was merely negligent or deceitful. Furthermore, I find that the record is not clear concerning the integrity of the bargaining process and the bargaining position of the parties. For example, the fact that Urban was apparently represented by counsel throughout the process mitigates against a finding that the P&S was a contract of adhesion or that the bargaining power

11

of the parties was unequal. For that reason, I am denying both motions for summary judgment on Urban's claims for breach of the covenant and violation of Chapter 93A.[7]

## Counsel's Continued Representation Of Urban

As mentioned above, *see* note 2 above, Attorney Dillon, who represents Urban in this case also represented her with respect to the underlying transaction. Attorney Dillon, who submitted an affidavit in support Urban's motion for summary judgment, appears to be a likely witness in this case concerning material facts. As previously discussed, *see* note 3, *supra,* Attorney Dillon's continued representation of Urban raises ethical concerns. Particularly since if he testifies, he would be subject to cross-examination which could result in his testimony being adverse to Urban. Therefore, before this matter proceeds any further, the Court will provide both parties an opportunity to present argument as to whether Attorney Dillon should be permitted to continue representing Urban in this case. However, I want to make clear that should a class be certified, under these circumstances, it is highly unlikely that Attorney Dillon will be permitted to represent the class members.

## Conclusion

1. the Motion Of The Defendant, Federal Home Loan Mortgage Corporation, For Summary Judgment (Docket No. 55), is ***allowed***, in part and ***denied***, in part, as provided herein, and

2. Plaintiffs' Motion For Summary Judgment Pursuant To Fed.R.Civ.P. 56 (Docket No. 60), is ***denied***.

---

[7] Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws 93A § 2. Conduct is unfair or deceptive if it falls "within any recognized or established common law or statutory concept of unfairness." *VMark Software v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994). Actionable conduct under the statute encompasses "[a]ctions involving fraudulent representations in knowing disregard of the truth," *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 780 (1986), and "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991) (quoting *Wang Laboratories, Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 857 (1986)).

The Court shall hold a hearing on the issue of whether Attorney Dillon shall be allowed to continue to represent the plaintiff. The Clerk shall set a status conference for purposes of setting determining the parameters of the hearing and setting a briefing schedule.

> */s/ Timothy S. Hillman*
> TIMOTHY S. HILLMAN
> DISTRICT JUDGE