# United States District Court
## District of Massachusetts

_____

|  |  |  |
|---|---|---|
| REBECCA URBAN, et al.,<br>Plaintiffs, | )<br>)<br>) |  |
| v. | )<br>)<br>) | **CIVIL ACTION**<br>**No. 11-10915-TSH** |
| FEDERAL HOME LOAN MORTGAGE CORPORATION<br>Defendant. | )<br>)<br>) |  |

_____

## MEMORANDUM AND ORDER
### January 13, 2015

**HILLMAN, D.J.**

### Background

Rebecca Urban ("Urban" or "Plaintiff"), has filed suit against the Federal Home Loan Mortgage Corporation ("FHLMC" or "Defendant"). Urban asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of Mass.Gen.L. ch. 93A ("Chapter 93A").[1]

In ruling on the parties' cross-motions for summary judgment, I noted that Attorney Thomas M. Dillon ("Attorney Dillon"), who is representing Urban in this case, had inserted himself into the proceedings as a percipient witness, thereby raising the specter of Attorney Dillon being required to withdraw from the case or being disqualified therefrom, in accordance with Rule 3.7 of the Massachusetts Rules of Professional Responsibility. Thereafter, FHLMC

---

[1] The Complaint includes a class action demand. To date, no motion for class certification has been filed. *See* Fed.R.Civ.P. 7(b)(1); LR, D.Mass., 7.1(b).

filed a motion to disqualify Attorney Dillon and his firm, Schmitt & Dillon, from serving as Urban's trial counsel. Attorney Dillon has agreed to withdraw from his representation as trial counsel and therefore, as to him the motion is *allowed*. For the reasons set forth below, the motion is *denied* as to Schmitt & Dillon. FHLMC also requests that the Court find that by raising certain claims in this action, Urban has waived the attorney-client privilege regarding her discussions with her counsel about title insurance. For the reasons set forth below, FHLMC's motion seeking a declaration of an "at issue" privilege waiver is *allowed*.

### **Facts Relevant To Disqualification and Privilege Waiver Issues**

FHLMC is a publicly traded United States Corporation chartered by an Act of Congress, organized and existing under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. § 1451, *et seq.* FHLMC is currently operating under a conservatorship that began on September 6, 2008 and is conducting its business under the supervision of the Federal Housing Finance Agency. As part of its role in Massachusetts, FHLMC acquires titles to properties that served as collateral for defaulted mortgages and sells those properties. In most cases, the properties have been foreclosed on. On April 14, 2010, FHLMC acquired title to a property by foreclosure order located at George Hill Road, in Lancaster, Massachusetts (the "Property"). FHLMC listed the Property for sale. Urban made an offer to purchase the Property, which was accepted by FHLMC. Harmon Law Offices, P.C. ("Harmon Law") represents FHLMC in the acquisition of titles pursuant to the filing of a foreclosure order and subsequent sales of properties in Massachusetts.

FHLMC requires buyers purchasing homes from it to enter into a purchase and sale agreement and related addendums. Urban executed a Standard Form Purchase and Sale Agreement on September 24, 2010. *See Statement of Undisp. Facts By Def. Fed. Home Loan*

*Mtg. Corp.* (Docket No. 57)("*Def's Factual Statement*"), at *Ex F* ("P&S"). Also included was

the Addendum #1 to Contract of Sale, which contained the following provisions:

> 17. <u>Closing Costs/Concessions</u>
>
> c.     Purchaser may choose the title insurance company for the closing. If Purchaser agrees to use the title insurance company utilized by the Seller's attorney or agent, the Seller agrees to pay for Purchasers Owner's Title Policy. <u>SELLER WILL NOT BE OBLIGATED TO PAY ANY PORTION OF THE COST OF AN OWNER'S TITLE POLICY IF THE POLICE IS NOT OBTAINED FROM THE TITLE INUSRANCE COMPANY UTILIZED BY SELLER'S ATTORNEY OR AGENT</u>.

*See Def's Factual Statement*, at *Ex E* ("Addendum"). Prior to closing on the Property, Urban,

through her attorney, Attorney Dillon, notified Harmon Law that, in accordance with Paragraph

17c. of the Addendum ("Paragraph 17c"), Urban wished to obtain title insurance from the title

insurance company utilized by FHLMC's attorney or agent. Harmon Law replied that under

Massachusetts law, FHLMC could not provide the title insurance because it would pose a

conflict of interest. More specifically, Harmon Law informed Attorney Dillon that where

Harmon Law represents FHLMC, it cannot provide the buyer with the title policy as part of the

transaction as it is a conflict of interest to represent both parties to a real estate transaction in

Massachusetts.

Urban purchased her own title insurance policy and proceeded with the closing, which

took place on December 20, 2010. The cost of the title policy was $680 and was listed on the

HUD-1 Settlement Statement as charged to Urban. According to Urban's Hud-1 Settlement

Statement, $476.00 of the $680.00 paid by Urban for title insurance, issued by the

Commonwealth Land Title Insurance Company, was paid to Attorney Dillon's law firm, as a

commission. On January 5, 2011, Urban renewed her request that FHLMC purchase the owner's

title insurance policy for her. Harmon Law denied the request because of state ethics rules. On

January 10, 2011, Urban served a Chapter 93A demand letter on FHLMC.

The parties filed cross-motions for summary judgment and in connection therewith, Urban filed *Pl's Statement of Undisputed Material Facts* (Docket No. 62). Urban accepted FHLMC's undisputed statement of material facts and "add[ed] the undisputed facts set forth in the Affidavit of Thomas Dillon. …" *Id.* Among the additional facts attested to by Attorney Dillon were the following:

    1.    "I (Attorney Dillon) have personal knowledge of the matters relative [to] Ms. Urban's purchase of [the Property] based on my representation of her in that transaction."

    2.    The P&S and its Addendum[2] "provided that [FHLMC] would pay for her Owner's Policy of title insurance if she agreed to use the title company utilized its attorney or agent. Ms. Urban wanted to take advantage of this [O]wner's Policy at [FHLMC's] expense because it would substantially reduce her closing costs, and she asked me to request the promised Owner's Policy."

    3.    "After the signing of the Addendum but before the closing I informed Joe Nolan of [Harmon Law] that Urban agreed to use the title company utilized by its attorney or agent such that [FHLMC] would pay for the Owner's Policy … Mr. Nolan responded: 'We get this question all the time. [FHLMC] does not honor that provision in Massachusetts. We told them this is a problem, but that is how it is.'"

    4.    "Ms. Urban closed her purchase of [the Property] on or about December 10, 2010 by accepting a deed to the property. [FHLMC] refused to pay for her Owner's Policy."

    5.    "On January 5 ,2011, I [Attorney Dillon] sent an e –mail to Kristen Reynolds of [Harmon Law] Office again requesting that [FHLMC] pay for an Owner's Policy from the title insurer used by its attorney … This request was again refused.

*Id.*, at *Attachment* (*Affidavit of Thomas M. Dillon*).

If nothing else, the statement attributed to Joe Nolan of Harmon Law (that FHLMC had been informed this provision was a problem in Massachusetts), is a contested issue of fact.

---

[2] Attorney Dillon attests that it was Paragraph 22 which provided that FHLMC would pay for Urban's Owner's Policy of title insurance if she agreed to use FHMLC's title company. As set forth above, it was actually Paragraph 17c of the Addendum.

## <u>Discussion</u>[3]

### *The Motion To Disqualify*

Attorney Dillon disputes that he is a necessary witness in this case and that none of the exceptions apply. Urban states that she does not press this dispute for the simple reason "that Attorney Dillon need not and will not act as *trial* counsel," and either she or FHLMC will be free to call him as a witness. I am disturbed by Attorney Dillon's failure to identify the obvious ethical implications when he filed his affidavit in connection with the summary judgment motion—not to mention his continued failure to appreciate an actual conflict that should be apparent to even the most neophyte practitioner. For that reason and given the cavalier tone of Urban's submission, I want to make clear that I do find that Attorney Dillon is a necessary witness in this case and that no exception applies and therefore, had he not conceded the point, I would have disqualified him as trial counsel.[4] The issue now becomes whether Attorney Dillon's firm, Schmitt & Dillon, should be disqualified.

### *Applicable Provisions*[5]

Rule 3.7 of the Massachusetts Rules of Professional Responsibility provide that:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness, except where:

> (1) the testimony relates to an uncontested issue;

> (2) the testimony related to the nature and value of legal services rendered in the case; or

---

[3] A substantial part of the the Court's discussion of Urban's legal claims and the law applicable thereto paraphrases or is taken directly from Judge Saylor's opinion denying FHLMC's motion to dismiss, without separate citation. *See Urban v. Federal Home Loan Mortgage Co.*, Civ. No. 11-10915-FDS, 2012 WL 245246 (D.Mass. Jan. 25, 2012).

[4] More specifically, I would have found that FHLMC sustained its burden of establishing that Attorney Dillon is likely to be a necessary witness because his proposed testimony is relevant, material, not cumulative and not obtainable elsewhere. *See Carta v. Lumbermens Mut. Cas. Co.*, 419 F.Supp.2d 23, 29-31 (D.Mass. 2006).

[5] The determination as to whether Schmitt & Dillon should be disqualified is controlled by the Massachusetts Rules of Professional Conduct. *See* LR, D.Mass. 83.6(4)(B).

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so under Rule 1.7 or Rule 1.9. [6]

Mass. S.J.C. Rule 3:07.

Furthermore, the comment so Rule 3.7 provide:

[1] Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.

[2] The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or an analysis of the proof.
….

[4] … Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. …

[5] … [I]f there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer's firm, the representation is improper. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved. See Comment to Rule 1.7. If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, Rule 1.10 disqualifies the firm also.

Comments 1,2 and 5 to Rule 3.7.

---

[6] Rule 1.9, which deals with conflicts of interest relating to former clients, is inapplicable in this case.

Rule 1.7 of the Massachusetts Rules of Professional Conduct provides, in relevant part:

> ….
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>>
>> (2) the client consents after consultation … .

Mass. S.J.C. Rule 1.7.

The comments to Rule 1.7, provide that a conflict is not in itself sufficient to preclude representation, however; the focus of the court must be on whether the lawyer's loyalty to the client is threatened. Additionally, there are some conflicts as to which a client cannot consent:

> [4] Loyalty to a client is … impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. … A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.
>
> [5] A client may consent to the representation notwithstanding a conflict. However, …. when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent … .

Comments 4 & 5 to Rule 1.7.

Massachusetts Rules of Professional Conduct 1.10 provides in relevant part:

Rule 1.10. Imputed Disqualification: General Rule

> **(a)** While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), or 1.9 … .

**(c)** A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.

Mass. S.J.C. Rule 1.10.

Read together, the applicable Massachusetts Rules of Professional Conduct allow the law firm of Schmitt & Dillon to continue representing Urban in this case, so long as she has consented after consultation and the lawyer *reasonably* believes that the representation will not be effected.  It is clear from its submission that Schmitt & Dillon do not believe that their continued representation of Urban will be adversely effected by the fact that Attorney Dillon is a percipient witness in this case.  At this time, I am willing to permit Attorney Schmitt to represent Urban at trial.  However, as with the disqualification of Attorney Dillon as trial counsel, I am troubled by the firm's inability to recognize the conflicts which warrant Attorney Dillon's disqualification and the potential conflicts which may arise should Schmitt & Dillon continue to represent Urban— conflicts which could lead to the firm being disqualified at a later date.  Given these potential conflicts, the Court will require that Urban file a signed affidavit on or before January 30, 2015 stating that Attorneys Schmitt and Dillon have explained such potential conflicts to her and that she consents to their continued representation.

### *Defendants' Motion To Find Waiver Of Attorney-Client Privilege*

Essentially, FHLMC is arguing that Urban has waived the attorney-client privilege over confidential communications which are relevant to the claims she has asserted in this action.  Urban's primary argument in opposition to FHLMC's motion is that her discussions with her attorney are not relevant to any of her asserted claims. I disagree.  Not only are the discussions relevant to Urban's claims, they are also relevant and highly probative to FHLMC's defense to those claims.  Therefore, for the reasons set

forth below, I find that she has waived the attorney-client privilege as to discussions

relevant to the claims she has asserted in this action.

## Standard Of Review

The attorney-client privilege 'must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth.' As with any privilege, attorney-client privilege can be waived, even implicitly (although implied waivers are hen's teeth rare). This is especially true in a civil proceeding where, because the privilege lacks a constitutional dimension, the 'liberal federal policy favoring discovery is of substantially greater relative weight.'

It is settled law that by placing privileged communications … 'at issue' in civil litigation, a party waives any applicable claim of privilege where nondisclosure would cause manifest unfairness to the opposing party. A waiver, as the First Circuit [has] made clear … is not automatic, but like most things judicial, is subject to a balancing test. The test requires an arbitrating court to consider whether a defendant has demonstrated the relevancy of the materials sought, whether there is any reasonable alternative source for the information the materials contain, and whether the plaintiff's presumptively valid interest in preserving the confidentiality of its privileged communications outweighs any need for disclosure. '[T]he privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.'

*F.D.I.C. v. R.W. Beck, Inc.*, No. CIV.A.01-CV-11982RGS, 2004 WL 1474579, at *1 (D.

Mass. July 1, 2004)(internal citations and citations to quoted cases omitted).

## Whether A Finding Of Waiver Is Appropriate In This Case

Based on its submissions, I find that FHLMC has clearly met "the threshold

showing of relevance is established by a précis of the core allegations asserted against it

in [Urban's] Complaint." *Id.* I also find for the reasons stated in its supporting

memorandum, that the FHLMC has established that there is no alternative source for the

information and that Urban's presumptively valid interest in maintaining the

confidentiality of the privileged communications does not outweigh the need for

disclosure. Therefore, I find that Urban has waived the attorney-client privilege as to

communications between herself and Attorney Dillon (and any other attorney at Schmitt & Dillon Urban spoke with) concerning title insurance and their communications with Harmon Law about the same. *See generally Greater Newburyport Clamshell Alliance v. Public Serv. Co.*, 838 F.2d 13 (1st Cir. 1988).

Accordingly, FHLMC shall have the opportunity to depose Urban, Attorney Dillon and any other such attorney at Schmitt & Dillon regarding those discussions. The Court will provide the parties an opportunity to file motions *in limine* prior to trial regarding the admissibility of specific communications.

<u>**Conclusion**</u>

It is hereby Ordered that:

Defendant Federal Home Loan Mortgage Corporation's Motion To Disqualify Attorney Thomas Dillon As Plaintiff Rebecca Urban's Counsel And Seeking Declaration Of An "At Issue" Privilege Waiver is ***allowed***, in part, and ***denied***, in part, as provided in this Memorandum and Order.

<u>*/s/* **Timothy S. Hillman**</u>
TIMOTHY S. HILLMAN
 DISTRICT JUDGE